# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) Criminal Case No.: 19-00095 (RDM) |
| ETSEGENET YOHANNES AKALU, | ) |
| Defendant. | ) |

## DETENTION MEMORANDUM

This matter comes before the Court on a motion by the United States requesting that Defendant Etsegenet Yohannes Akalu ("Ms. Akalu") be detained pending trial. Ms. Akalu has been charged by Indictment with two counts of Protection of Foreign Officials, Official Guests, and Internationally Protected Persons, in violation of 18 U.S.C. § 112(a), and one count of Assault with a Dangerous Weapon, in violation of D.C. Code § 22-402. The United States requested a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(A). The undersigned held a detention hearing on March 14, 2019 and concluded that Ms. Akalu should be held without bond pending trial. This memorandum fulfills the Bail Reform Act's requirement that a pretrial detention order "include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011).

## Statutory Basis for Detention Hearing

The United States moved for a Detention Hearing on the basis that the case involves a crime of violence. The Court presumes this to be a reference to 18 U.S.C. § 3142(f)(1)(A) under

the Bail Reform Act. Ms. Akalu did not dispute the United States' contention that this statutory provision authorized the Court to hold a detention hearing in this matter.

## Findings of Fact

At the detention hearing, the United States proceeded by proffer based on its Memorandum in Support of Pretrial Detention. *See* Gov't's Mem. in Supp. of Pretrial Detention, ECF No. 4. Having considered the United States' proffer and the information provided by the Pretrial Services Agency, the Court makes the following findings of fact.

On March 10, 2019, around 4:00 p.m., Ms. Akalu drove her white van directly behind a Subaru Legacy occupied by two individuals. When she was directly behind the Subaru, the Government proffers that Ms. Akalu pressed her car horn for almost 30 seconds, then accelerated her van, slamming into the rear of the Subaru. After this first collision, Ms. Akalu sped past the Subaru. Approximately 500 feet down the road, Ms. Akalu rammed into a second car, which was occupied by a mother, father, and their six-month-old infant. The father ("D1") is a diplomat at the Embassy of the United Kingdom in Washington, D.C.

D1 exited his car and approached Ms. Akalu to exchange insurance information. Ms. Akalu also exited her van. After Ms. Akalu exited her vehicle, the van rolled backwards into the flow of traffic, spun around, and struck a tree on the other side of the street; it appears that Ms. Akalu failed to shift her car into 'park.' The Government proffers that Ms. Akalu was immediately hostile toward D1, shouting and showing aggressive body language. Ms. Akalu struck D1 repeatedly in the face with an open palm. Ms. Akalu then grabbed sunglasses off of D1, breaking them in the process. Upon being attacked by Ms. Akalu, D1 grabbed Ms. Akalu's right arm to stop her from striking him. Ms. Akalu then used her left hand to continue striking D1. D1's wife filmed a portion of the incident using a cellphone. After repeatedly striking D1,

Ms. Akalu walked to her vehicle and returned carrying a clipboard. Ms. Akalu used the clipboard to strike D1's wife in the head.

Shortly thereafter, law enforcement arrived on the scene. Law enforcement observed Ms. Akalu walking in the middle of the street. The Government proffers that Ms. Akalu was belligerent, behaving erratically, and making loud outbursts. She stated that she wanted to see Donald Trump. Law enforcement took Ms. Akalu into custody. The next day, Ms. Akalu tested positive for a controlled substance.

During a search incident to arrest, law enforcement recovered from Ms. Akalu's right pocket: two (2) baggies of methamphetamine, five (5) baggies of cocaine, and a red straw with residue that the Government proffers appeared to be drug residue. In addition, from inside Ms. Akalu's van, law enforcement recovered two digital scales, 72 empty baggies, and a white powdery substance on the driver-side floorboard and center console.

The Government also proffers that Ms. Akalu has had several prior encounters with law enforcement. On November 25, 2018, Ms. Akalu appeared at the Israel Embassy in Washington, D.C., demanding to speak with President Donald J. Trump and the Ambassador for Israel. Ms. Akalu made several incoherent claims and yelled at Secret Service agents that approached her, before leaving the scene. On February 9, 2019, law enforcement was called to an apartment that Ms. Akalu shared with another individual. That individual reported that Ms. Akalu had gotten into an argument with him, and after returning to the apartment the next day, he found that Ms. Akalu had allegedly stabbed and punched multiple holes into the walls of the apartment. Finally, on March 3, 2019 around 8:50 p.m. Ms. Akalu entered a restaurant in Adams Morgan. After the manager asked her to leave, Ms. Akalu assaulted the manager and was subsequently arrested. A

search incident to arrest revealed that Ms. Akalu had cocaine on her person, and the next day, Ms. Akalu tested positive for drugs.

## Legal Standard

"In our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, articulates the circumstances that trigger that exception. Specifically, it authorizes a judicial officer to order the detention of a defendant before trial if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

A finding that a defendant poses a danger to the community, or that there is a serious risk that the defendant will flee, provides an adequate basis to order pretrial detention. *See Salerno*, 481 U.S. at 755; *United States v. Lee*, 195 F. Supp. 3d 120, 124 (D.D.C. 2016); *United States v. Henry*, 935 F. Supp. 24, 25 (D.D.C. 1996). A detention decision based upon the defendant's dangerousness to the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f); *see United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). In contrast, a detention decision based upon a finding that no set of conditions will reasonably assure the defendant's appearance in court "need only be supported by a 'preponderance of the evidence.'" *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) (quoting *United States v. Vortis*, 785 F.2d 327, 329 (D.C. Cir. 1986)); *see United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *United States v. Anderson*, 382 F. Supp. 2d 13, 14 (D.D.C. 2005).

The Bail Reform Act directs judges to consider four factors in determining whether any conditions of release will reasonably assure a defendant's future presence in court or assure the

safety of any other person and the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g); *Xulam*, 84 F.3d at 442.  The court must consider the available information pertaining to all four factors, even if the parties' arguments do not address each factor.  *See* 18 U.S.C. § 3142(g); *United States v. Hassanshahi*, 989 F. Supp. 2d 110, 117 (D.D.C. 2013).

When there is probable cause to believe that a defendant committed certain offenses, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B).  Once this rebuttable presumption has been triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original).  Furthermore, "even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely." *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017).  Instead, the "presumption is incorporated into the other factors . . . in determining whether to grant a conditional release and is given substantial weight."  *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (quoting *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011)); *see also United States v. Hite*, 76 F. Supp. 3d 33 (D.D.C. 2014) (detaining the defendant even though the defendant had presented enough evidence to rebut a presumption of detention).

**Discussion**

The United States sought detention on the basis of Ms. Akalu's dangerousness. The Court's analysis of that detention request is guided by the four factors set forth in Section 3142(g) of the Bail Reform Act. *See United States v. Little*, 235 F. Supp. 3d 272, 277–78 (D.D.C. 2017); *United States v. Muschetta*, 118 F. Supp. 3d 340, 343–44 (D.D.C. 2015). After weighing the statutory factors, the Court concludes that there are no release conditions that would reasonably assure the safety of the community if Ms. Akalu were released. Therefore, pretrial detention is appropriate.

The first factor, the nature and circumstances of the offense, slightly favors detention. The Bail Reform Act directs the Court to consider, as part of its analysis of this factor, whether the charged offense involves a crime of violence. *See* 18 U.S.C. § 3142(g)(1). Ms. Akalu is charged with assault with a dangerous weapon under the D.C. Code and two counts of a federal offense of assaulting individuals who were at the time a foreign official, official guest, and internationally protected person. *See* 18 U.S.C. § 16 (defining "crime of violence"). In addition, the alleged circumstances include Ms. Akalu ramming her vehicle into other vehicles, striking an individual in the face with her hand, and striking another individual with a clipboard. Although the Government does not contend that Ms. Akalu's conduct caused injuries requiring medical attention, the nature and circumstances weigh in favor of detention.

The second factor, the weight of the evidence, also favors detention. Strong evidence exists in this matter; the Government has proffered the existence of victim statements, cellphone footage of Ms. Akalu striking one of the victims, and surveillance footage of Ms. Akalu beginning the attack against one of the victims. Accordingly, the evidence is strong, and this factor weighs in favor of pretrial detention.

The third factor, which considers a defendant's history and characteristics, favors detention.  Ms. Akalu's relative lack of criminal record would ordinarily weigh strongly in favor of pretrial release.  However, the record indicates that Ms. Akalu was put on pretrial release in a different D.C. Superior Court matter, just six days prior to the commission of this alleged offense.  This raises serious questions as to whether Ms. Akalu would abide by conditions set by this Court.  The Court also has given serious consideration to Ms. Akalu's argument regarding underlying issues of substance abuse and possible mental health issues.  In light of these issues, Ms. Akalu argued that release to a residential drug treatment program would be more appropriate.  However, such programs are voluntary and require the participant to remain at the program.  Considering the timing of the instant alleged offense and the timing of Ms. Akalu's release from her other matter, the Court has little confidence that Ms. Akalu would follow Court orders to commit to such a voluntary program.  Accordingly, Ms. Akalu's history and characteristics weigh in favor of pretrial detention.

Finally, the fourth factor, which considers the nature and seriousness of any danger to the community, slightly favors detention.  On one hand, the Government raised concerns and proffered evidence that Ms. Akalu has been engaging in increasingly violent and erratic conduct.  On the other hand, Ms. Akalu has never been convicted for any violent offense, nor have there been any allegations that she has access to or would use weapons, outside of her alleged use of her vehicle as a weapon in this case.  As a result, this factor does not weigh as strongly in favor of detention as it would if other types of violence were alleged.  However, there is still enough risk and concern about violent conduct that this final factor favors detention.

The Court also has considered Ms. Akalu's contention that any risk of dangerousness would be mitigated by placement in an in-patient drug treatment program.  However, for the

reasons stated above, and given the overall weight of the statutory factors, placement into such a program or any other release conditions, including the High Intensity Supervision Program, would not adequately mitigate any risk of danger to the community. In sum, no conditions would reasonably assure the safety of the community if Ms. Akalu were released.

### Conclusion

For the foregoing reasons the Court finds that the United States has met its burden in showing, by clear and convincing evidence, that pretrial detention is warranted because Ms. Akalu presents a danger to the community. Having reviewed and weighed all of the evidence and the factors set forth in 18 U.S.C. § 3142(g), and considered all of the lesser restrictive alternatives to pretrial detention, this Court concludes that no condition nor combination of conditions would reasonably ensure the safety of the community if Ms. Akalu were released. Therefore, the Court GRANTS the United States' motion for detention without bond.

Dated:  April 2, 2019

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE